**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JOSEPH ORAZIO, | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 3:19-cv-02936-M |
| vs. | § | |
| | § | |
| NISSAN MOTOR ACCEPTANCE | § | |
| CORPORATION, | § | |
| Defendant. | | |

**MOTION TO STAY ACTION AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendant Nissan Motor Acceptance Corporation ("Defendant") and respectfully moves this Court for an order staying this action and discovery proceedings pending a decision by the United States Supreme Court in *Facebook v. Duguid*, Sup. Ct. No. 19-511.

## I.   INTRODUCTION

1.      Following the decision of the U.S. Court of Appeals for the District of Columbia in *ACA International, et al. v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), circuit courts have split on the definition of an ATDS leading to inconsistent results ultimately leading to the granting of a writ of certiorari by the United States Supreme Court to clarify the definition.  In this case, the Plaintiff alleges that Defendant violated the TCPA by using an automated telephone dialing system ("ATDS") to place calls to Plaintiff's cell phone.[1]  Because the definition of an ATDS is a threshold issue in Plaintiff's claims against Defendant, a ruling by the United States Supreme Court clarifying ambiguities in the law regarding the definition of an ATDS will have a direct impact on Plaintiff's claims in this case and Defendant's potential liability. Therefore, Defendant respectfully requests the Court stay this case pending a ruling in *Facebook v. Duguid*.

---

[1] *See* Doc 1 (Complaint) ¶ 28.

## II. <u>BACKGROUND</u>

**A.     Plaintiff Must Prove Nissan Used an ATDS to Call His Cellular Telephone.**

2.     On December 12, 2019, Plaintiff filed a Complaint alleging Nissan violated the Telephone Consumer Protect Act ("TCPA" or "Act") by initiating telephone calls to his cellular telephone using an ATDS.[2]   The TCPA defines an ATDS as: "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[3]   The statute prohibits any person from using an ATDS to make a call to a cellular telephone number without prior express consent.[4]   Plaintiff's claims accordingly rise or fall on whether the equipment used by Defendant to place calls to his cellular telephone number qualifies as an ATDS.   As set forth below, following the D.C. Circuit opinion in *ACA Int'l v. FCC,* 885 F.3d. 687 (D.C. Cir. 2018), extensive litigation across the country has thrown the definition of an ATDS in flux ultimately resulting in the granting of a writ of certiorari by the United States Supreme Court to clarify the definition.

**B.     ACA International Opinion Invalidated an FCC 2015 Declaratory Ruling.**

3.     The TCPA vests the Federal Communications Commission ("FCC" or "Commission") with rule making authority to regulate the implementation of the Act's requirements.[5]   In a Declaratory Ruling and Order issued in 2015, the Commission (with two Commissioners dissenting) addressed 21 separate petitions for rulemaking or requests for clarification.   In the 2015 Ruling, the Commission clarified which devices qualified as an Automatic Telephone Dialing System ("ATDS"). With regard to whether equipment has the "capacity" to perform the enumerated functions, the Commission declined to define a device's

---

[2] *See* Doc 1 (Complaint) ¶ 28.
[3] *See* 47 U.S.C. § 227(a)(1).
[4] *See Id.* §227(b)(1)(A).
[5] *See Id.* §227(b)(2)

"capacity" in a manner confined to its "present capacity."  Instead, the agency construed a device's "capacity" to encompass its "potential functionalities" with modifications such as software changes.[6]

4.     In *ACA Int'l v. FCC*, 885 F.3d. 687 (D.C. Cir. 2018), a number of regulated entities sought review of the FCC's 2015 Declaratory Ruling and Order including which automated dialing equipment is subject to the TCPA's restrictions on unconsented calls.  The Court found that because the 2015 Order expansively defined "capacity" to encompass both devices with the current capacity to function as an ATDS and the future capacity to function as an ATDS, the 2015 Order had the unintended consequence of including cellphones which have the inherent capacity to function as an ATDS simply by downloading an app.  The Court found that this interpretation of the statute was too expansive rendering it unreasonable and impermissible.[7]

5.     In addition, the Court found the 2015 Order gave no clear answer as to whether to be considered an ATDS a device must be able to generate random or sequential numbers to be dialed instead of dialing from a pre-determined list or whether it can qualify even if it lacks that capacity.  The Court ruled that the lack of clarity about which functions qualify a device as an auto dialer compounds the unreasonableness of the Commission's expansive understanding of when a device has the "capacity" to perform such function therefore setting aside the treatment of those matters.[8]

C.     **ACA Int'l Leads To A Split In Circuit Courts.**

6.     As a result of the *ACA Int'l* decision, appellate courts throughout the county have reinterpreted the definition of an ATDS leading to a split in the circuits and uncertainty in

---

[6] *See* 2015 Declaratory Ruling, 30 FCC Rcd. at 7974 ¶ 16.
[7] *See ACA Int'l*, 885 F.3d at 695-700.
[8] *See ACA Int'l*, 885 F.3d at  700-703.

3

results. In *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Circuit 2020), the 11th Circuit found that post-ACA, the definition of an ATDS under 47 U.S.C. § 227(b)(1)(A) did not include equipment used in calls targeting specific customers.  Specifically, the Court found that the phrase "using a random or sequential number generator" modified both verbs "store" and "produce."[9]   Much like the *ACA* Court, the *Glasser* Court found that if the phrase "using a random or sequential number generator" solely modifies "[to] produce" and not "[to] store" the definition of an ATDS would "extend[] to all communication technology" including smartphones which "have the capacity to automatically dial telephone numbers stored in a list" in an unintended broad sweep.[10]   The *Glasser* Court found this interpretation of an ATDS conformed with the FCC's  definition of an ATDS from 1991 to 2003.[11]

7.      In *Gadelhak v. AT&T Servs.*, 950 F.3d 458 (7th Cir. 2020), the 7th circuit joined the 11th Circuit taking a more limited view of the definition of an ATDS.  On appeal, the 7th Circuit concurred with the *Glasser* Court that "using a random or sequential number generator" modifies both "store" and "produce" and since the system at issue exclusively dials numbers stored in a customer database it is not an "automatic telephone dialing system" as defined by the Act.[12]  Unlike the Court in *Duran* discussed below, the *Gadelhak* Court determined that the *ACA* Court did not leave prior FCC Orders intact.[13]

8.      In *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), the 9th Circuit found that *ACA Int'l* set aside not only the 2015 Order but also the FCC's previous orders regarding the definition of an ATDS and concluded that no such orders are binding on the

---

[9] *See Glasser*, 948 F.3d at 1306.
[10] *See Glasser*, 948 F.3d at 1309.
[11] *See Glasser*, 948 F.3d at 1308.
[12] *See Gadelhak*, 950 F. 3d. at 460.
[13] *See Gadelhak*, 950 F.3d at 463.

Court.[14] Given a clean slate to interpret the definition of an ATDS, the 9th found the statutory definition of an ATDS included a device that stores telephone number to be called, whether or not those numbers have been generated by a random or sequential number generator.[15]

9.      In *Duran v. Boom Disco, Inc.* 955 F.3d 279 (2nd Cir. 2020), the 2nd Circuit followed the 9th Circuit.  The *Duran* Court found that when interpreting the phrase 'capacity…to store or produce telephone numbers to be called, using a random or sequential number generator' the verbs "store" and "produce" take on different meanings, since "produce" is modified by the clause after the comma in the statute—"using a random or sequential number generator"—while "store" is not. Under this approach, a dialing system can be an ATDS if it can "store" numbers, even if those numbers are generated elsewhere, such as a person.[16]  Unlike the *Marks* Court, the *Duran* Court did not find that the *ACA* decision invalidated the Commissions interpretation of the TCPA and looked towards the rules promulgated in 2003, 2008, and 2012 to guide its interpretation.[17]

10.      Although the 5th Circuit has not ruled on the definition of an ATDS following *ACA Int'l*, two post-*ACA Int'l* District Court decisions might indicate that the 5th Circuit could lean towards a limiting definition of an ATDS.  First, in *Suttles v. Facebook, Inc.*, 2020 U.S. Dist. Lexis 90026, 1:18-CV-1004-LY (W.D. Tex. May 20, 2020),  the Court found that to be considered an ATDS under the TCPA the device must randomly or sequentially generate – not just store – numbers to be considered an ATDS under the Act.[18] Second, in *Adams v. Safe Home Sec. Inc.*, 2019 U.S. Dist. LEXIS 126522, 3:18-CV-03098-M (N.D. Tex. July 30, 2019) this

---

[14] *See Marks*, 904 F.3d at 1049
[15] *See Marks*, 904 F.3d at 1043.
[16] *See Duran*, 955 F.3d at 284-285.
[17] *See Duran*, 955 F.3d at 286-287.
[18] *See Suttles*, 2020 U.S. Dist. Lexis 90026 * 15.

Court found that post-*ACA Int'l* that an "ATDS must both store and produce numbers that are randomly or sequentially generated and not merely store numbers."[19]

11.     Ultimately, because the definition of an ATDS is a threshold issue for nearly every TCPA case, including the case at bar, the U.S. Supreme Court granted Writ of Certiorari in *Facebook v. Duguid*, Sup. Ct. No. 19-511 on July 9, 2020. The case, which petitioner Facebook appealed from the 9th Circuit back in October 2019, presents two questions: (1) Whether the Telephone Consumer Protection Act's prohibition on calls made using an automatic telephone dialing system (ATDS) is an unconstitutional restriction of speech, and if so whether the proper remedy is to broaden the prohibition to abridge more speech, and (2) whether the definition of ATDS in the TCPA encompasses any device that can "store" and "automatically dial" telephone numbers, even if the device does not "us[e] a random or sequential number generator." The grant of certiorari applies only to "the second question presented by the petition," i.e., the question pertaining to the definition of an ATDS.  A ruling in this case will streamline litigation and discovery in TCPA cases including this case.

**D.     The Questions To Be Addressed By The *Facebook* Court Bear Directly On This Case**

12.     A ruling in the *Facebook* matter resolving the above-discussed split in circuit will directly apply to the issue of whether Defendant's equipment constitutes and ATDS.  At this point, the Court lacks a clear definition of an ATDS to apply to Defendant's equipment.  And, as set-forth in the Declaration of  Cameron Strabbing attached hereto as Exhibit A, Defendant's dialing systems used during the relevant time period did not have the capacity to produce or store telephone numbers using a random or sequential number generator.[20] Therefore, whether

---

[19] *See Adams*, 2019 U.S. Dist. LEXIS 126522 *9 (The Court denied the Motion to Dismiss and allowed the case to continue to discovery.)
[20] *See* Ex. A ¶ 4.

Defendant's equipment qualifies as an ATDS is a threshold question for liability for which this Court lacks a clear definition.[21]  As such, as set-forth below, this case would benefit from a stay of proceedings.

### III.   ARGUMENT

**A.    Legal Standard For A Stay.**

13.     "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."[22]  "The district court has the inherent power to control its own docket, including the power to stay proceedings."[23] "How to best manage the court's docket 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'"[24] "In deciding whether to stay litigation pending reexamination, courts typically consider: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set."[25]

---

[21] *See Dwyer v. USAA Sav. Bank*, No. SA-17-CA-252, 2017 U.S. Dist. LEXIS 218891, at *4 (W.D. Tex. Nov. 21, 2017).

[22] *See Landis v. N Am. Co.*, 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936).

[23] *See Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (*citing Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *see also Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir.1983)).

[24] *Id.* (*quoting Landis*, 299 U.S. at 254-55, 57 S.Ct. 163).

[25]  *Id.* (*citing Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)).

**B.      All of the Factors Favor Issuing A Stay.**

        **1.      No Undue Prejudice or Tactical Disadvantage Will Result If A Stay Is Issued.**

14.      Plaintiff will not suffer damage or harm in the event a stay is entered.  Plaintiff is seeking statutory damages in the amount of up to $1,500 per call and injunctive relief.  Courts in this circuit have found that a delay in receiving damages does not alone prejudice the nonmoving party.[26]  Additionally, the Plaintiff does not allege that phone calls are ongoing or currently occurring.  Since the challenged conduct has already ceased, there is no need for injunctive relief that might warrant denying a stay.  Moreover, there is not tactical disadvantage which will result from a stay being issued.  Specifically, Plaintiff's case turns on a discrete legal issue which is to be addressed by the Supreme Court.  In cannot be said that the Plaintiff will be prejudiced by allowing the Supreme Court to determine a legal question before this Court.  As such, this factor weights in favor of a stay.

        **2.      A Stay Will Simplify The Issues In Question.**

15.      A stay is also justified because it would simplify the issue in this case.  There is little doubt that whether the equipment used by the Defendant constitutes an ATDS is an essential element of the Plaintiff's claim.  Moreover, the circuit split discussed above creates substantial uncertainty whether or not the equipment at issue constitutes an autodialer.  The lack of clarity regarding what constitutes an ATDS poses a significant issue in this case.  Specifically, the parties must assess how this Court (and the ultimately the Fifth Circuit) would define an ATDS following *ACA Int'l*.  A stay, however, would provide the Court and the parties guidance regarding the definition of an ATDS which may abdicate the need for summary judgment briefing and streamline discovery, and ultimately, a resolution.  Moreover, a preliminary

---

[26] *See NFC Tech. LLC v. HTC Am., Inc*., 2:13-cv-1058-WCB, 2015 U.S. Dist. LEXIS 29573, at *7 (E.D. Tex. Mar. 11, 2015)(citing *VirtualAgility Inc. v. Salesforce.com, Inc.,* 759 F.3d 1307, 1318 (Fed. Cir. 2014).

summary judgment or trial ruling would lead to additional briefing through the circuit court which could exponentially increase the cost of litigation.  In addition, Courts have stayed TCPA litigation pending clarification of the definition of an ATDS including in this circuit.[27]  Although the *Mizell*, *Dwyer, and Ankcorn* cases were stayed prior to *ACA Int'l.*, the *Seefeldt* Court recognized that the "best approach is to wait for much-needed clarity from the Supreme Court."[28] There is little doubt that the ruling by the Supreme Court in *Facebook* will clarify the legal issues facing this Court.  Therefore, the second factor weighs heavy in favor of a stay.

### 3.    Discovery is Ongoing And A Trial Date Is Set.

16.    A stay is also justified in this case because this case is still in its infancy. Although the Complaint was filed December 12, 2019 and a scheduling order was issued February 21, 2020, discovery remains open.  Defendant has responded to discovery requests but has not produced documents and has only recently propounded discovery to Plaintiff.  Neither party has designated experts.  As such, there is a significant amount of expense to be undertaken in the form of discovery, protective orders, depositions, expert related discovery, motions and briefing, and ultimately trial.  This significant expense associated with this matter is ahead of the parties.  As such, a stay to clarify the primary legal issues in this matter would also significantly reduce future costs and expenses.  In fact, in *Seedfeldt*, the Court stated that a stay is appropriate "to avoid exhausting judicial resources to decide things" including "discovery-related matters or summary judgment motions to follow which may prove fruitless"  finding that a "(relatively) young case at least from the standpoint of litigation efforts, if not time alone, favors the staying

---

[27] *See Mizell v. Conn Appliances, Inc.*, Case No. 4:15-CV-550, 2017 U.S. Dist. Lexis 16118 (E.D. Texas Sept. 28, 2017).  *See also See Dwyer v. USAA Sav. Bank*, No. SA-17-CA-252, 2017 U.S. Dist. LEXIS 218891, at *4 (W.D. Tex. Nov. 21, 2017).  *See also Ankcorn v. Kohl's Corp.*, No. 15-CV-1303, 2017 U.S. Dist. LEXIS 12149, 2017 WL 395707, at *1 (N.D. Ill. Jan. 30, 2017).  *See also Seefeldt v. Entm't Consulting Int'l*, Case No. 4:18-CV-00188, 2020 U.S. Dist. LEXIS 31815 (E.D. Miss. February 25, 2020).
[28] *See Seefeldt*, 2020 U.S. Dist. Lexis 31815 *9-10.

of litigation."[29] As such, because of the infancy of the case, this factor weighs heavily in favor of a say.

## IV.     CONCLUSION

17.     Since the decision in *ACA Int'l*, the definition of an ATDS is in flux with a split in circuits throughout the country.  Because the definition of an ATDS is a threshold issue in TCPA cases, the Supreme Court has granted writ of certiorari to resolve the issue and clarify the definition.  Such a definition would clarify the legal issues in this case and focus both discovery and litigation.  As such, based on the inconsistency of the law, the pending Supreme Court case, and the factors set forth above, the Court should grant this motion and stay the case pending the Supreme Court's ruling in *Facebook v. Duguid.*

WHEREFORE, the Parties request the Court stay this action and discovery proceedings pending the Supreme Court's decision in *Facebook v. Duguid,* and for such further relief as Defendant is entitled under the facts of the law.

Dated: August 7, 2020

Respectfully submitted,

By: */s/ Aaron B. Gottlieb*

**R. Dwayne Danner**
State Bar No. 00792443
ddanner@mcglinchey.com
**Aaron B. Gottlieb**
State Bar No. 24069815
agottlieb@mcglinchey.com
**McGlinchey Stafford, PLLC**
Three Energy Square
6688 North Central Expressway, Suite 400
Dallas, Texas 75206
(214) 445-2445 Tel.
(214) 445-2450 Fax.

***ATTORNEYS FOR DEFENDANT***

---

[29] *See Seefeldt,* 2020 U.S. Dist. Lexis 31815 *11-12.

## CERTIFICATE OF CONFERENCE

I, Aaron B. Gottlieb, hereby certify that on August 7, 2020, I conferred with counsel for Plaintiff, Mr. Thompson, via email, regarding Defendant's motion to stay this action as set forth above.  Mr. Thomson indicated he is opposed to the motion.

By: */s/ Aaron B. Gottlieb*  
AARON B. GOTTLIEB

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2020, a true and correct copy of the foregoing has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure as shown below.

*Via CM/ECF*

Sharon K. Campbell  
Sharon@SharonKCampbell.com  
Law Offices of Sharon K. Campbell  
3500 Oak Lawn Ave., Suite 110  
Dallas, Texas 75219

*Counsel for Plaintiff*

*Via CM/ECF*

Russell Snow Thompson , IV  
rthompson@consumerlawinfo.com  
Thompson Consumer Law Group PLLC  
5235 East Southern Avenue, D106-618  
Mesa, AZ 85206

*Counsel for Plaintiff*

*/s/ Aaron B. Gottlieb*  
AARON B. GOTTLIEB

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| JOSEPH ORAZIO, | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 3:19-cv-02936-M |
| vs. | § | |
| | § | |
| NISSAN MOTOR ACCEPTANCE | § | |
| CORPORATION, | § | |
| Defendant. | | |

**DECLARATION OF NISSAN MOTOR ACCEPTANCE CORPORATION**

I, Cameron Strabbing, declare as follows:

1.      I am currently employed as the Strategy Manager of Remarketing at Nissan Motor Acceptance Corporation ("**NMAC**"). I was formerly the Strategy and Support Manager for the Collections Department at NMAC. I am authorized to sign this declaration on NMAC's behalf. I am over the age of 18 and competent to testify to the matters contained in this Declaration, which is provided in support of Defendants' Motion to Stay Action and Brief in Support filed in the above-captioned litigation.

2.      In the regular performance of my job as the Strategy and Support Manager for the Collections Department, I created strategic models for multi-unit servicing departments optimizing existing departmental systems to improve synergy and work flows. I acted as a liaison to Information Systems related to new system implementation and enhancements. In my day-to-day capacity as the Strategy and Support Manager for the Collections Department, I ran the dialer administration team and related strategies including customer contact procedures throughout the collections department. My job required an in-depth understanding of the integration of the NMAC dialing systems within the NMAC mainframe system which includes in-depth knowledge of the current and former NMAC dialing systems.

EXHIBIT "A"

3.     As such, I am familiar with the current and former NMAC dialing system used during the relevant time frame of the pending lawsuit.

4.     During the relevant time period, NMAC used both the Genesys Outbound Dialer 7.5 and the Cisco Outbound Dialer 10.0.  At no time did the dialing systems used by NMAC have the capacity to store or produce telephone numbers using a random or sequential number generator.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of August, 2020.

_____
*Signature of Declarant*

Cameron Strabbing
_____
*Print Name of Declarant*